## Hanbest's Estate.

*Trust and trustees—Commissions— Ground rent.*

Where a trustee under the advice of his counsel objects to exoneration proceedings under the Act of February 23, 1853, P. L. 98, on the ground of the insecurity of a redeemable ground rent, and subsequently the trustee dies, and his attorney is substituted in his place, and thereafter the substituted trustee accepts a reduction of the rental for several years instead of taking payment of the principal, and it appears that the reduced rental produced a revenue equal to that from ordinary investment of trust funds, and it also appears that in subsequent exoneration proceedings, the residuary legatees took the ground rent at its full face value, the trust estate thereby being relieved of it, the substituted trustee cannot be said

to have been guilty of such misconduct in dealing with the ground rent, as would justify the court in depriving him of his commissions.

Submitted Dec. 12, 1902. Appeal, No. 216, Oct. T., 1902, by John DeHaven Hanbest et al., from decree of O. C. Phila. County, July T., 1878, No. 127, sustaining exceptions to adjudication in estate of Thomas Passmore Hanbest, deceased. Before BEAVER, ORLADY, SMITH, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Exceptions to adjudication of PENROSE, J.

HANNA, P. J., filed the following opinion:

The trustee was appointed July 19, 1890, and from all the facts before us would seem entitled to the moderate sum requested by him as compensation out of the principal estate liberated from the trust and about to be distributed.

The objection, however, interposed by the distributees to this allowance to the trustee "was mainly, if not altogether, based upon the action of the accountant with regard to the ground rent of $3,000 per annum already referred to." The facts with regard to the ground rent are that, in accordance with the directions contained in the will of the testator, a lot of ground owned by him was sold and conveyed by the executors, reserving thereout an annual ground rent of $3,000, or six per cent per annum upon $50,000. In 1885, the death of one of the annuitants having occurred, an application was made to the court by the distributees for distribution of a portion of the estate, for the reason that the remaining assets of the trust were sufficient to secure payment of the annuities to the surviving annuitants, and, consequently, the property sought to be distributed could with safety be exonerated from the lien of the annuitants. But the application was resisted by the then surviving trustee, the present trustee being his counsel; and the master and examiner, to whom the petition for exoneration was referred, reported adversely to the application, for the reason chiefly that in his opinion the ground rent referred to was insufficiently secured, and if retained as one of the investments held to protect the annuities from the risk of its depreciation in value, the principal of the trust estate might be reduced, and the income correspondingly lessened.

The trustee having subsequently died, his son, the present accountant, was selected by the parties interested, and appointed trustee in his place and stead, as before stated, in July, 1890. The ground rent of $3,000 per annum was accordingly received by the new trustee as one of the investments of the estate. The annual interest or rent continued to be paid by the owners of the land until in March, 1892, not quite two years subsequent to the appointment of the trustee, the accountant, when they declared to him that unless he agreed to reduce the rate of interest upon the ground rent from six to five per cent per annum, they would pay to him the principal sum of $50,000, and thus extinguish the ground rent.

The trustee, upon consideration of the proposal, finally agreed to reduce the rate of interest to five per cent, and accept any portion of the principal at any time. Why the trustee complied with the demand of the owners of the land appears from his testimony, wherein he states he considered it for the best interests of the estate to make the reduction ; and as " there was no state tax to pay on the ground rent," he " considered a five per cent ground rent was as good as a mortgage of five and four tenths, which was then the prevailing rate."

No reason appears to doubt the entire good faith of the trustee. It does not appear that the owners of the land ever tendered to him the entire principal of the ground rent or any part thereof. But it is now urged that, because he did not refuse to reduce the annual ground rent and insist upon payment of the principal thereof, and that seven years previously, while acting as counsel for the then trustee, he had objected to the exoneration of the portion of the trust estate sought to be distributed, and maintained that the remaining assets of the estate, including the ground rent, were insufficient to secure the payment of the remaining annuities, for the reason that the ground rent was of doubtful value and security, it is such evidence of gross negligence and mismanagement that he should be deprived of commissions upon the corpus of the estate now to be paid to the residuary legatees, and to which it is conceded he would otherwise be entitled.

We must, however, differ from this view. In agreeing to the reduction of the ground rent and accepting the principal in installments, it was within the discretion of the trustee, and

he was acting within the line of his personal responsibility. Whatever he may have done in the past in his representative capacity was wholly outside of his duty and discretionary power as an individual fiduciary. In one capacity he was merely the mouthpiece of another; while in the other he was the principal, to be guided by his own judgment and discretion. And even if it be conceded, as remarked by the auditing judge, "it would however, in view of the character of the security, have been wiser to have accepted the principal, even at the risk of realizing not more than five per cent or less from interest on reinvestments, since in that case the principal would have been actually realized, and thus secured beyond all possibility of depreciation, while as it is, payment of the principal of this ground rent cannot be demanded from the owner of the lot, and if the rent itself is offered for sale it is fair to assume that the loss will be considerable," and, as further remarked by him, the parties interested were not consulted by the trustee, "and they complain that not only were they injured by the reduction of income, but that, as a further consequence, they were prevented from obtaining at that time a distribution of principal which the improved condition of the estate as compared with what it was at the time" of the adverse report of the master and examiner "would have entitled them to," still, at most, the action of the trustee cannot be considered a flagrant breach of trust to be followed either by surcharge with the amount of interest or ground rent he abated to the owner of the ground, or the forfeiture of compensation for faithful conduct and meritorious services in the care and management of the trust. At the most, it was an error or mistake of judgment, and for this he should not be deprived of the usual commissions allowed a faithful trustee: Dugan's Estate; 18 W. N. C. 39; Page's Estate, 18 W. N. C. 456.

Only faithless trustees are to be visited with a loss of commissions; where they are honest, and their default is the result of ignorance or mistake alone, they are not to be punished: McMenamin's Appeal, 41 Legal Int. 226. Nor, except in case of gross negligence or fraud: Sourin's Estate, 11 Phila. 14.

And where an executor had mingled the trust account with his own, but no loss occurred, and it was merely an error of

bookkeeping, he was allowed commissions: Williamson's Estate, 7 W. N. C. 82.

In Ahl's Estate, 129 Pa. 26, a trustee having performed valuable services was not deprived of his commissions, though he mingled the trust funds with his own, and was reluctant to give the master the benefit of his aid in adjusting the trust estate. See also Patrick's Estate, 162 Pa. 175, where it was held that although, through a misconstruction of the will by a trustee, he had put claimants to litigation to establish their rights, he having acted in good faith, would not necessarily be thereby deprived of his commissions. And, again, in the late case of Waddell's Estate, 196 Pa. 294, the well settled rule that an executor will not be surcharged for loss that occurs through a mere error of judgment is reiterated.

The result of all the cases is that the courts are lenient and generous towards trustees who perform their duties honestly and faithfully, and are never disposed to deal harshly with what is clearly a mistake or error of judgment.

In the present case, the trustee has managed the trust according to his best judgment and professional skill; his many accounts have been audited and confirmed without objection; he has rendered services and labor connected with the care and management of the trust estate irrespective of the perfunctory duties of an accountant, and the objections now made to the allowance of the compensation claimed by him out of the corpus of the estate we think do not afford a sufficient reason to deprive him of his compensation, and, a fortiori, where it appears that the ground rent has never been paid off, but was afterwards distributed to the parties interested at its full value, who thereupon claimed and have since been paid the ground rent at six per cent per annum.

For these reasons we think the exceptions should be sustained.

A final decree of distribution will be prepared by counsel in accordance herewith.

PENROSE, J., filed a dissenting opinion as follows:

A principle recognized as fundamental since the earliest history of the commonwealth, viz: that a fiduciary is not liable for loss arising from an honest error of judgment, scarcely re-

quires to be supported in the present day by elaborate argument or copious citation of authorities perspicua vera non sunt probanda; and if the auditing judge could have committed the egregious blunder of overlooking it, the mere statement would have been enough to sustain exceptions to his ruling. But as he understands the facts, the mistake complained of by the distributees was not of this character.

The charity created by the will having failed by reason of the death of the testator within a calendar month of its execution, the residuary estate passed under the intestate laws to his next of kin and heirs. The persons thus entitled, who were very numerous, appear to have been in humble circumstances, and, not unnaturally, were desirous of having the estate, which was of considerable size, distributed; but the will gave various annuities, which were a charge on both personalty and realty, so that distribution could only be had by a proceeding under the act of 1853, for exoneration.

Such a proceeding was instituted in 1885. It was resisted by the then trustees, for whom the present accountant was counsel, on the ground that one of the principal assets—a ground rent, the principal of which was $50,000—was insufficiently secured, and that it could not be relied upon to protect the interests of the annuitants. This objection was sustained by the master to whom the application was referred, who, after an extensive discussion of the subject, stating in detail the reasons for condemning the ground rent, reported with much reluctance against the distribution asked for.

A few years later, when counsel so opposing exoneration has himself become trustee, the market company owning the land bound by the ground rent demanded a reduction of the rent from six per cent to five per cent, declaring that if this was not acceded to, the principal would be paid in cash; and the accountant, having, of course, full knowledge of all that had taken place under the application for exoneration, deliberately refused to accept $50,000, which would have permitted the earnestly sought-for distribution, and agreed to retain at a reduced rate of interest, which had been, and still was, the only obstacle in the path of exoneration, and all of this was done without any communication with the owners of the estate or their counsel, whose first knowledge of it was several years

later, when some of the annuitants having died, there was another proceeding for exoneration, and the ground rent itself was liberated though the opportunity of realizing the principal has probably gone forever. By reason of this the estate remained in the control of the trustee, subject to commissions and charges, and the owners received, through his hands, only the net income, instead, as he knew they otherwise would have done of a distribution of principal, freed from all trust, with the deductions incident.

The auditing judge, though he refrained from characterizing in appropriate terms what was thus done, was, and still is, unable to regard it as "a mere error of judgment," and for that reason declined to allow compensation for retention of principal.

*Error assigned* was the decree of the court.

*Francis S. McIlhenney* and *Anthony A. Hirst*, for appellants.

OPINION BY W. D. PORTER, J., March 12, 1903:

It was conceded in the court below, and upon the argument here that the appellee was entitled to the commissions which are the subject of this controversy, if he performed his duties with fidelity. The appellants contend that the action of the trustee with respect to a certain ground rent involved a breach of duty which should result in a forfeiture of his right to commissions. That a fiduciary is not liable for loss arising from an honest error of judgment is upon all hands admitted to be the law. The evidence disclosed that among the investments of the estate was a ground rent redeemable at the pleasure of the lessee; the latter notified the trustee that the principal of the ground rent would be paid in cash unless the amount of the rent was reduced from six to five per cent, during the existence of the trust; the accountant agreed to the reduction of the rent, which was subsequently paid at the reduced rate, until the ground rent estate was subsequently allotted at its full face value, to the residuary legatees, who thereupon claimed and have since been paid the ground rent at the full rate originally reserved. There seems to be no question, under the evidence, that the rent at the reduced rate produced a revenue equal to

the amount which could have been realized from any other investment of the principal which the trustee could have made. The complaint of the appellant is not so much upon the ground that the income of the estate was diminished, but that because of the failure of the trustee to collect the principal the estate suffered a loss for the reason that the ground rent was not a good security, and was now worth considerably less than its face. The legatees ultimately entitled to receive the proceeds of the trust estate, having accepted the ground rent at its full face value, the loss to the trust estate, as such, does not clearly appear. The appellant having failed to convince a majority of the judges of the court below that the accountant had been guilty of any breach of duty or gross negligence, we do not feel warranted under the evidence in disturbing that conclusion. The opinion of the president judge of the orphans court satisfactorily sustains the decree, which is affirmed.